**LOIS JEANS & JACKETS, U.S.A., INC., now known as Lois Sportswear, U.S.A., Inc., Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 83–4–00620.

United States Court of International Trade.

May 27, 1983.

Whitman & Ransom (John M. Hadlock and Max F. Shutzman, New York City, of counsel), for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, New York City, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch and Michael P. Maxwell, New York City, for defendant.

## MEMORANDUM ON PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION

NEWMAN, Judge:

### Introduction

This memorandum supplements an expedited order previously entered granting plaintiff's application for a preliminary injunction. 5 CIT ——, Slip Op. 83–47 (May 12, 1983). A footnote to the preliminary injunctive order noted that the order "was entered expeditiously due to the exigencies of the case and no further reflection by the Court was required. In due course, this order will be supplemented by a detailed memorandum."

In this action—commenced April 28, 1983 —plaintiff contests the denial of its protest against nine redelivery notices issued by the United States Customs Service ("Customs") on March 1, 1983 affecting certain jeans made in Spain and imported by plaintiff at the Port of New York in early 1983. Jurisdiction of the subject matter, predicated upon 28 U.S.C. § 1581(a), is not in issue.

The notices of redelivery were based upon a ruling issued by Customs on June 30, 1982, which determined that a stitching design on the back pockets of the imported Lois jeans, infringes upon a registered and recorded trademark owned by Levi Strauss & Company ("Levi"), a domestic manufacturer of jeans, and hence the Lois jeans would not be permitted entry into the United States. See 15 U.S.C. §§ 1124, 1051 *et seq.*

The present matter came before the Court on plaintiff's application for an order to show cause, dated and entered on April 28, 1983 after a Court conference with counsel for the parties. Pursuant to such order, defendant was directed to appear at a hearing on May 9, 1983 to show cause why an order should not be entered in conform-

ance with rule 65 of the Rules of the Court of International Trade, enjoining defendant during the pendency of this action from enforcing the notices of redelivery. After hearing and considering the undisputed oral testimony of plaintiff's two witnesses, extensive undisputed documentary proof, affidavits and exhibits submitted by plaintiff, as well as briefs filed by the parties, this Court, as noted above, issued an order granting plaintiff a preliminary injunction on May 12, 1983.

### Background

Plaintiff is an importer and distributor in the United States of jeans and other wearing apparel manufactured by Textiles, plaintiff's parent company in Spain. In the spring of 1980, the New York Regional Office of the Customs Service served plaintiff with notices of redelivery in connection with two shipments of jeans which were found by Customs to have a stitched design on the back pockets that infringed upon a trademark owned by Levi.

The Levi trademark in question comprises a "double arcuate" design stitched on the back pockets of Levi's jeans. In 1980, Customs determined that the double arcuate design stitched on the back pockets of the imported Lois jeans was nearly identical to the design of the Levi trademark. Plaintiff concedes that the stitching on the back pockets of its jeans "would generally be described as double stitched arcuates" (memorandum, at 2).

On May 22, 1980 plaintiff petitioned for relief from the 1980 notices of redelivery ostensibly in accordance with Part 171 of the Customs Regulations, 19 CFR § 171, *et seq.* By an unpublished ruling issued on June 4, 1981, Customs held that the stitched back pocket design on the Lois jeans did not infringe upon Levi's trademark; and subsequently on June 9, 1981 Customs notified Lois by letter that the jeans subject to the 1980 notices of redelivery were "released

insofar as the Trademark Law (15 U.S.C. § 1124) is concerned".[1]

It further appears that on October 30, 1981 counsel for Levi submitted a letter to Customs requesting reconsideration of the June 4, 1981 ruling favorable to Lois. Concededly, and for reasons which are unknown to counsel for defendant, Customs failed to notify plaintiff of the Levi submission, or that the ruling of June 4, 1981 was under reconsideration, or that any change in that ruling was contemplated, all in violation of 19 CFR § 177.10(c)(2). After an extensive review of the infringement issue, and again without notice to plaintiff as required by 19 CFR § 177.9(d)(1), Customs reversed its ruling of June 4, 1981 in another unpublished ruling dated June 30, 1982, which determined that the stitched back pocket design on the Lois jeans infringed upon Levi's double arcuate trademark. The June 30, 1982 ruling provided that Lois jeans bearing the double arcuate design on the back pockets would be prohibited from entry into the United States and that the ruling would be effective sixty days after issuance (August 30, 1982). Further, the June 30th ruling stipulated that "shipments of Lois jeans bearing the infringing design which are in transit or on order prior to the effective date of this decision will not be considered as infringing".

The evidence establishes that, by the time Customs issued its new ruling, plaintiff had ordered substantial quantities of jeans from the Spanish manufacturer, made binding commitments for the sale of those jeans to its American customers, and incurred substantial expenditures and commitments for advertising.

As indicated, *supra,* Customs failed to notify plaintiff of its new ruling on June 30, 1982. Understandably, plaintiff was taken by surprise when on October 13, 1982 it learned of the June 30, 1982 ruling from a news article published by the Bureau of National Affairs. On October 18, 1982 counsel for Lois met with Customs officials

---

**1.** It does not appear that Customs gave Levi any notice that the petition by Lois was under consideration, and it is unknown when Levi first obtained knowledge of the June 4, 1980 ruling.

in Washington and obtained a sixty day postponement of the effective date of the new ruling to December 18, 1982. Significantly, by the time of the October 18, 1982 meeting, Customs had already made its decision to reverse its prior ruling and agreed merely to postpone the implementation of its new decision.

On December 14, 1982, Lois filed a prior action in this Court (No. 82–12–01715) seeking injunctive relief to prevent the implementation of the June 30, 1982 ruling, and simultaneously filed a declaratory judgment action in the United States District Court for Southern District of New York against Levi, raising the infringement issue. In that prior Court of International Trade action, Lois sought a temporary restraining order on December 14, 1982, but that application was denied by Judge Watson after a hearing in chambers. Before a hearing was scheduled on plaintiff's application for a preliminary injunction in the prior action, defendant cross-moved to dismiss for lack of jurisdiction. That cross-motion was granted by this Court in its current order of May 12, 1983.

It also appears that in January and February of 1983 Lois imported some nine shipments of jeans, none of which were seized by Customs. However, in early March 1983, Customs issued redelivery notices for the merchandise imported in January and February 1983.[2] And Customs' action in initially allowing the importation of the Lois jeans in the face of the June 30, 1982 ruling plainly added to plaintiff's state of confusion engendered by Customs' change in its position without notice.

As previously mentioned, plaintiff contests the denial of its protest against the redelivery notices issued by Customs on March 1, 1983. Accordingly, plaintiff has properly invoked the jurisdiction of the Court under 28 U.S.C. § 1581(a).

## Opinion

In *S.J. Stile Associates Ltd. v. Dennis Snyder*, 68 CCPA ——, C.A.D. 1261, 646 F.2d 522 (1981), our Appellate Court succinctly enumerated the relevant factors in considering an application for a preliminary injunction:

> * * * (1) a threat of immediate irreparable harm; (2) * * the public interest would be better served by issuing than by denying the injunction; (3) a likelihood of success on the merits; and (4) that the balance of hardship on the parties favored [plaintiff].

After considering the criteria mentioned above, I find that this is an appropriate case for the issuance of preliminary injunctive relief in the exercise of the Court's discretion.

## I.

### Irreparable Harm

Plaintiff contends that it will suffer immediate irreparable harm if implementation of the redelivery notices issued under the June 30, 1983 Customs ruling is not enjoined during the pendency of this action. In support of that contention, plaintiff submitted an affidavit of its president, Franz X. Richetti, and oral testimony by two witnesses at the hearing on May 9, 1983. Defendant submitted no evidence in rebuttal.

The evidence adduced by plaintiff establishes that Customs, without formal or informal notice to plaintiff, reconsidered its original June 4, 1981 ruling (which permitted the entry of the Lois jeans); and after reversing its original ruling on June 30, 1982, Customs likewise gave Lois no notice of the new ruling. See discussion of the merits, *infra*. Moreover, the unrebutted evidence adequately demonstrates plaintiff's extensive promotional efforts and marketing endeavors, substantial expenditures, and the sales and advertising commitments incurred in understandable reliance upon the favorable ruling of June 4, 1981. Further, it appears that because a substantial number of the imported jeans had already been shipped to plaintiff's customers in ac-

---

**2.** Some of garments listed on the redelivery notices did not bear the arcuate design (Tr. 43–44, 47).

cordance with prior orders, it is now impossible for plaintiff to redeliver such jeans to Customs' custody and comply with the notices of March 1, 1983. Moreover, at the time plaintiff received the redelivery notices, some 37 orders (representing 1,054 pairs of jeans) to be filled from the importations have not been shipped to customers because of the redelivery notices. Mr. Richetti's affidavit also avers that Lois has defaulted in filling other orders placed months before importation due to additional redelivery notices dated March 28, 1983 and received by plaintiff on or about April 1, 1983.

Finally, the evidence shows that defendant's actions have resulted in the loss to plaintiff of past and future sales, injury to plaintiff's reputation as a reliable supplier, and potential costs (which could not be precisely quantified) required for altering plaintiff's production methods in the event that plaintiff should be compelled to discontinue selling jeans bearing its double arcuate design in the United States market. Indeed, in 1982, approximately 70% of plaintiff's sales were of jeans bearing the design in dispute.

In light of the unrebutted evidence presented by plaintiff, I find that there is a viable threat of immediate irreparable injury if implementation of the redelivery notices issued pursuant to the June 30, 1982 Customs ruling is not enjoined *pendente lite.* The short of the matter is: by precluding plaintiff from filling its customers' orders for jeans placed months before importation and thus placing plaintiff in default of its obligations, the real prospect for lost future orders, the lost benefits from its past advertising, substantial expenditures for marketing and promotional efforts, and the loss of plaintiff's reputation in the trade and with the consuming public are significant actual and potential injuries which warrant the extraordinary relief of a preliminary injunction.

## II.

### The Merits

Turning to the merits, I find that plaintiff is likely to succeed in establishing its claim that the contested notices of redelivery should be declared null and void on the ground that the June 30, 1982 ruling was made without compliance by the Customs Service with its regulations concerning notice and opportunity for comment.

Specifically, plaintiff asserts that there was noncompliance by Customs with the following regulations:

19 CFR § 177.10(c)(2):

(2) Before the publication of a ruling which has the effect of changing a position of the Customs Service and which results in a restriction or prohibition, notice that the position (or prior ruling on which the position is based) is under review will be published in the FEDERAL REGISTER and interested parties given an opportunity to make written submissions with respect to the correctness of the contemplated change.  * * *

19 CFR § 177.9(d)(1):

(d) *Modification or revocation of ruling letters*—(1) *Generally.* Any ruling letter found to be in error or not in accordance with the current views of the Customs Service may be modified or revoked. Modification or revocation of a ruling letter shall be effected by giving notice to the person to whom the ruling letter was addressed and, where circumstances warrant, by the publication of a notice or other statement in the Customs Bulletin.

The record establishes that plaintiff received no notice (actual or constructive) that the initial ruling of June 4, 1981 was under reconsideration at the request of Levi, or that Customs had reversed the original ruling on June 30, 1982. Defendant, nevertheless, urges that since plaintiff learned of the June 30, 1982 ruling before it was implemented, and that Customs postponed implementation of the ruling for sixty days to provide Lois with an opportunity to rearrange its business affairs, noncompliance with the cited regulations was nonprejudicial.

While I agree with defendant's argument that nonprejudicial procedural de-

fects in agency action should be ignored, here the procedural irregularities complained of by Lois—viz., lack of notice and opportunity to comment—are so fundamentally prejudicial as to constitute a deprivation of due process.

I cannot believe that *after* Customs had decided to reverse its prior June 4, 1981 ruling and issued its new ruling of June 30, 1982, the mere postponement of the latter's implementation by Customs sufficed to make noncompliance with the above-quoted regulations non-prejudicial. Obviously, when Customs made its new decision without the requisite notice, plaintiff had no opportunity for input into the reconsideration of the original ruling, nor was plaintiff accorded any opportunity to respond to Levi's arguments. Moreover, as noted *supra,* plaintiff was not even given notice by Customs after the issuance of the new ruling. Because of these basic procedural irregularities in the agency's action, I hold that there is a substantial likelihood that plaintiff will succeed in establishing the invalidity of the redelivery notices, which are predicated upon the June 30, 1983 ruling.

■ I further find that plaintiff is likely to succeed in establishing its alternative claim that the merchandise subject to the redelivery notices of March 1, 1983 was "on order" prior to the effective date of the June 30, 1982 ruling, and therefore such merchandise is outside the scope of that ruling.

The June 30, 1982 ruling states, in pertinent part:

This decision which reverses the previous position of the Customs Service will be effective 60 days after the date of this decision, so that shipments of Lois jeans bearing the infringing design which are in transit *or on order prior to the effective date of this decision* will not be considered as infringing. * * * [Emphasis added].

As we have seen, the effective date of the June 30, 1982 ruling was postponed by Customs for sixty days to December 18, 1982 after consultation with counsel for plaintiff on October 18, 1982. The evidence proves that the subject merchandise was "on order" before December 18, 1982 (to fulfill prior commitments to plaintiff's customers). Consequently, the merchandise ordered prior to December 18, 1982, by the very terms of the ruling, "[would] not be considered as infringing".

■ Since plaintiff has established a likelihood of success on the merits of its claims that plaintiff was not given notice in connection with the reconsideration and issuance of the June 30, 1982 ruling, and that such ruling permitted plaintiff to enter all jeans "on order" before the effective date of the ruling, we need not reach the substantive aspects of the infringement issue. While plaintiff has raised serious and substantial questions going to the merits of its substantive trademark claim, essentially, the infringement issue is not within the exclusive jurisdiction of the Court of International Trade nor within the Court's special expertise in matters relating to international trade. As previously stated, the infringement issue is now before the District Court. In view of that circumstance, the forum of choice respecting the infringement issue from the standpoint of judicial expertise, economy and efficiency, is clearly in the District Court.

*Balance of Hardship and the Public Interest*

■ In balancing the hardship upon the parties, there can be no doubt that the scale tips decidedly in plaintiff's favor. The record adequately demonstrates that there is a viable threat of immediate irreparable injury to plaintiff's business if preliminary injunctive relief were not granted. Defendant, on the other hand, faces no perceivable threat of economic loss if a preliminary injunction is granted. In point of fact, the sole interest of the Government in this action is in carrying out its statutory obligation respecting trademark infringement under 15 U.S.C. § 1124, and Levi has been conspicuously absent from any participation in these proceedings. Levi may, of course,

protect its interests in the pending District Court litigation. But plainly, the public interest is not served where, as here, Customs seeks to implement a ruling tainted by substantial procedural irregularities, as discussed *supra*.

### Conclusion

Plaintiff has satisfied the requirements for preliminary injunctive relief as enumerated in *S.J. Stile Associates Ltd., supra*.

Accordingly, in the critical necessity for expedition, this Court heretofore has issued an expedited order granting plaintiff a preliminary injunction, and this memorandum will serve to supplement that order.