## AMERICAN AIR PARCEL FORWARDING COMPANY, LTD., et al., Plaintiffs,

v.

## UNITED STATES, United States Customs Service, and the Commissioner of Customs, Defendants.

### Court No. 83–7–00995.

United States Court of International Trade.

April 25, 1984.

Goodman, Miller & Miller, P.C., Southfield, Mich. (Jonathan Miller, Southfield, Mich., on the motion); Sandler & Travis, P.A., (Leonard L. Rosenberg and Marc D. Crames, Miami, Fla., on the motion) for plaintiffs.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, New York City, Attorney in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., (Kenneth N. Wolf, New York City, on the motion) for defendants.

## MEMORANDUM OPINION AND ORDER

CARMAN, Judge.

In the most recent decision of this court in connection with this matter, *American Air Parcel Forwarding Co. v. United States*, 6 CIT ——, 573 F.Supp. 117 (1983), the court denied plaintiffs' request for a preliminary injunction, denied without prejudice defendants' motion to dismiss counts I and III of the complaint, denied without

prejudice defendants' motion to dismiss the action as to plaintiff E.C. McAfee Company, and granted defendants' motion to dismiss the action for lack of jurisdiction as to all contested entries except Entry No. 337670 of January 2, 1981 (the only entry for which the required increased duties were paid).

The case presently is before the court on plaintiff American Air Parcel Forwarding Company, Ltd. (AAP) and the E.C. McAfee Company's motion for partial summary judgment. The defendants have opposed the motion, cross-moved for partial summary judgment, again moved to dismiss count I of the complaint as well as to dismiss the action as to plaintiff E.C. McAfee Company, and to dismiss for failure to state a claim upon which relief can be granted, or, in the alternative, for partial judgment on the pleadings. Defendants also assert that AAP is not the real party-in-interest and, therefore, move to dismiss unless AAP's surety, the St. Paul Fire and Marine Insurance Company, is substituted as a plaintiff.

Some of the pertinent facts in this case as stipulated to by the parties were relayed in the court's opinion of September 20, 1983. See 6 CIT at ——, 573 F.Supp. at 118–19. For purposes of clarity in this opinion, however, the relevant facts are highlighted below.

Plaintiff AAP imported certain made-to-measure wearing apparel from Hong Kong during 1981. In connection with the valuation of this merchandise, the District Director of Customs at the Port of Detroit, Michigan, requested advice from the Customs headquarters pursuant to 19 C.F.R. § 177.11 (1983).[1] Nine months later, Customs headquarters issued a ruling letter in

response to the request. This ruling was designated CLA–2: RRUCA 065056CW TAA # 10 (TAA No. 10). In TAA No. 10, Customs headquarters opined that the price paid by Hong Kong distributors to Hong Kong tailors for made-to-measure garments was, under certain conditions, appropriate in establishing export and transaction value for appraisement purposes. See C.S.D. 81–72, 15 Cust.Bull. 876, 880–81 (1980). More than 7 months after the publication of TAA No. 10 in the Customs Bulletin, Customs headquarters issued another ruling designated CLA–2–CO:R:CV:V, 542643 TLL, TAA # 40 (TAA No. 40). TAA No. 40 retroactively revoked TAA No. 10 with respect to the appraisement calculation. Unlike TAA No. 10, TAA No. 40 was not published in either the Customs Bulletin or the Federal Register, and no party was informed that TAA No. 10 was under reconsideration. The effect of TAA No. 40 was to increase substantially the amount of duties required of plaintiff AAP in connection with its entries.

■ The court first considers defendants' preliminary motions. Defendants move to dismiss for (1) lack of jurisdiction and standing as to plaintiff E.C. McAfee Company; (2) dismissal of the action against AAP, or, in the alternative, to substitute the surety, St. Paul Fire and Marine Insurance Company, as plaintiff; (3) dismissal of count I for lack of jurisdiction, asserting the gravamen of the protest filed was not the administrative decision contested, or, in the alternative, for partial judgment on the pleadings or partial summary judgment as to count I insofar as it relates to the asserted illegal revocation of TAA No. 10.[2]

---

1. 19 C.F.R. § 177.11(a) (1983) provides in part: Generally. Advice or guidance as to the interpretation or proper application of the Customs and related laws with respect to a specific Customs transaction may be requested by Customs Service field offices from the Headquarters Office at any time, whether the transaction is prospective, current, or completed.... Advice or guidance will be furnished by the Headquarters Office as a means of assisting Customs personnel in the orderly processing of Customs transactions under consideration by them and

to insure the consistent application of the Customs and related laws in the several Customs districts. Requests for advice received by the Headquarters Office will be processed as expeditiously as possible.

2. Defendants have moved to have this action designated a test case under Rule 84 of the Rules of the United States Court of International Trade. Because designation of the instant matter as a test case may facilitate the disposition of the related civil actions now pending

Defendants contend that as to the E.C. McAfee Company, this court lacks jurisdiction since McAfee did not file a protest or pay the increased duties in this case and, therefore, lacks standing. Defendants further contend that plaintiff AAP is not a real party-in-interest and has no pecuniary concern in the outcome of this proceeding since the St. Paul Fire and Marine Insurance Company, its surety, and not AAP, paid the increased duties in this case.

This court rejects these contentions by the defendants. Rule 19 of the Federal Rules of Civil Procedure, after which this court's rule 19 is patterned,[3] is designed to make the joinder of parties "simpler, more flexible and more liberal than the [procedural law] of most states and former federal equity practice." 7 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1601, at 10 (1972); *see Greenleaf v. Safeway Trails, Inc.*, 140 F.2d 889, 891 (2d Cir.), *cert. denied*, 322 U.S. 736, 64 S.Ct. 1048, 88 L.Ed. 1569 (1944). The presumed contractual relationship between plaintiff AAP, its principal, and its surety, St. Paul, for indemnification, in addition to other aspects of the case, is such that as a practical matter, AAP might not be able to protect fully its interests if it were not able to continue as a party in this action. Plaintiff, McAfee, the customs broker, in a practical and legal sense, seems to be inextricably entwined in the same legal and factual issues that confront AAP. Plaintiff McAfee finds itself so situated that to protect its interests, it should be permitted to continue as a party to this action. Accordingly, the motions of defendants to dismiss as to plaintiff, AAP, and plaintiff, McAfee, for lack of jurisdiction and standing are denied.

Because TAA No. 10 was published, in plaintiffs' view, general administrative law

principles and Part 177 of the Customs Regulations preclude its revocation without publication and opportunity for comment. TAA No. 40 was not published in either the *Federal Register* or the *Customs Bulletin.* Plaintiff therefore contends that TAA No. 40 is a nullity insofar as it seeks to revoke TAA No. 10. Plaintiffs further contend that publication of TAA No. 10 established a uniform practice pursuant to 19 C.F.R. § 177.10(b), (c) (1983), and cannot be changed without publication in the *Federal Register* and without opportunity for public comment. Additionally, plaintiffs assert that the retroactive application of TAA No. 40 was illegal under 19 C.F.R. § 177.10(e) (1983), which provides for a 90-day grace period before an assessment of a higher rate of duty or increased duties become effective. Plaintiff also asserts, citing *Lois Jeans & Jackets, U.S.A., Inc. v. United States*, 5 CIT ——, 566 F.Supp. 1523 (1983), that the lack of notice and opportunity for comment were so fundamentally prejudicial as to constitute a deprivation of due process.

Defendants counter that TAA No. 10 is not a ruling "regarding a rate of duty or charge" within the contemplation of 19 C.F.R. § 177.10(b) (1983); that the concept of a uniform practice is inapplicable in this case because TAA No. 10 was not published pursuant to 19 C.F.R. § 177.10(b), and that, therefore, its publication did not create a uniform practice; that the revocation of TAA No. 10 was legally and validly effected, and that 19 C.F.R. § 177.10(c) is inapplicable; and that plaintiffs were not entitled to rely upon TAA No. 10.

## DISCUSSION

The court first considers the question of whether TAA No. 10, a ruling pertaining to

---

before the court, the defendants' motion to have this matter designated as a test case is granted.

**3.** Rule 19(a) of the Rules of the United States Court of International Trade provides in part:
A person shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may

(A) as a practical matter impair or impede his ability to protect that interest, or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party....
U.S.Ct.Int'l Trade R. 19(a).

a method of appraisement, is within the ambit of the *Publication of decisions* section of the Customs Regulations. *See* 19 C.F.R. § 177.10(b). If TAA No. 10 is the type of ruling within the purview of section 177.10, then clearly publication and opportunity for comment would be required before TAA No. 40 could take effect. *See id.* § 177.10(c)(1), (2).

The publication requirements of section 177.10(b) pertain to "rulings regarding a rate of duty or charge." [4] Any such ruling that is published in the *Federal Register* establishes a "uniform practice." *Id.* According to subsection (c), notice and opportunity for comment are required before the publication of a ruling that changes a uniform practice and that results in a higher rate of duty. *Id.* § 177.10(c).

■ The term "rate of duty" is significant in this context. Most products imported into the United States are dutiable at a certain rate as set forth in the Tariff Schedules of the United States (TSUS). *See* 1 R. Sturm, *Customs Law and Administration* § 1.3 (3d ed.1983). Indeed, all items imported into the United States ei-

ther are subject to a rate of duty or are exempt, according to the TSUS. *See* 19 U.S.C. § 1202 (1982). Most duty rates are grounded on a percent of value, or ad valorem, basis. Other rates are based upon quantity terms. Still other rates combine these two types of rates. *See* 1 R. Sturm, *supra*, § 1.1. The term "rate of duty" in this case means a fixed ratio or proportion arrived at through a particular classification which, when applied to the value of the imported item, will determine the amount of tariff to be paid. *See Bradford Co. v. American Lithographic Co.*, 12 Ct.Cust. Appls. 318, 323 (1924) ("We think that a proper interpretation of the phrase, 'rate of duty,' ... means the amount of duty assessed against imported merchandise, resulting in the first instance, from the *classification* thereof.") (emphasis added).[5]

■ Here, both TAA No. 10 and TAA No. 40 pertain to methods of appraisement resulting in valuations. Neither ruling dealt with a "rate of duty or charge" since the fixed ratio against which the value of the merchandise was applied remained the same. Hence, the publication and notice requirements of 19 C.F.R. § 177.10 were

**4.** Provision for the issuance of rulings and their administration has been made generally by regulation. *See* 19 C.F.R. § 177.0–.11 (1983). Certain parts of 19 C.F.R. § 177.1 provide in part as follows:

(a) *The issuance of rulings generally*—(1) *Prospective transactions.* It is in the interest of the sound administration of the Customs and related laws that persons engaging in any transaction affected by those laws fully understand the consequences of that transaction prior to its consummation. For this reason, the Headquarters Office of the United States Customs Service or the Regional Commissioner, Region II, will give full and careful consideration to written requests from importers or other interested parties for rulings or information setting forth, with respect to a specifically described Customs transaction, a definitive interpretation of applicable law, or other appropriate information....

(d) *Definitions.* (1) A "ruling" is a written statement issued by the Headquarters Office or the Regional Commissioner, Region II, that interprets and applies the provisions of the Customs and related laws to a specific set of facts. A "ruling letter" is a ruling issued in response to a written request therefor and set forth in a letter addressed to the person mak-

ing the request or his designee. A "published ruling" is a ruling which has been published in the Customs Bulletin. (2) An "information letter" is a written statement issued by the Headquarters Office or the Regional Commissioner, Region II, that does no more than call attention to an interpretation or principle of Customs law, without applying it to a particular set of facts. An information letter may be issued in response to a request for a ruling when: (i) The request suggests that general information, rather than a ruling, is actually being sought, (ii) the request is incomplete or otherwise fails to meet the requirements set forth in this part, or (iii) the ruling requested cannot be issued for any other reason, and (iv) it is believed that general information may be of some benefit to the party making the request.

19 C.F.R. § 177.1(a)(1), (d)(1)–(2) (1983).

**5.** "Charges" (or "exactions") as used in 19 C.F.R. § 177.10(b) (1983) applies to "assessments of specific sums of money (other than ordinary customs duties) on imported merchandise," such as storage and cartage fees. *See Alberta Gas Chems., Inc. v. Blumenthal,* 82 Cust.Ct. 77, 81–82, 467 F.Supp. 1245, 1249–50 (1979) (cases cited).

not triggered by the publication of TAA No. 40, and that ruling effectively revoked TAA No. 10.

TAA No. 10 and TAA No. 40 are properly governed by the regulations set forth in 19 C.F.R. § 177.9 (1983).[6] These provisions relate to "ruling letters," and operate on much the same principle as Internal Revenue Service letter rulings. Such letters are binding only with respect to the particular transaction they describe. Modification and revocation of such ruling letters is provided for in 19 C.F.R. § 177.9(d),[7] which allows the Customs Service to revoke or modify a letter ruling if it is simply "found to be in error or not in accordance with the current views" of Customs. There are no mandatory publication and public notice requirements in section 177.9(d). Thus, TAA No. 40 legally and effectively revoked TAA No. 10.[8] *Lois Jeans & Jackets, U.S.A., Inc. v. United States*, 5 CIT ——, 566 F.Supp. 1523 (1983), is easily distinguishable. That case dealt with an importation of jeans bearing a trademark that allegedly infringed upon an American company's registered mark. Customs had originally held, in an unpublished letter ruling, that the trademark did not constitute an infringement. Subsequently, however, Customs reversed its position, in another unpublished letter ruling, and held that the imported jeans' mark did infringe upon the domestic owner's trademark. The court's analysis, however, centered on 19 C.F.R. § 177.10(d)(2), which covers restrictions and prohibition on importations. That provision is not in issue here. Further, in *Lois Jeans*, Customs failed even to notify the plaintiff of the modification. This was a clear violation of 19 C.F.R. § 177.9(d)(1) and constituted a denial of due process. In this case, however, plaintiff AAP was notified of the effectiveness of TAA No. 40 by a ruling letter issued on October 19, 1981, in satisfaction of section 177.9(d)(1). Lastly, *Lois Jeans* was decided in the context of a preliminary injunction proceeding. Accordingly, Judge Newman held that the facts presented merely a "substantial likelihood" that the procedural irregularities constituted a violation of the Customs Regulations and the Constitution. *See* 5 CIT at ——, 566 F.Supp. at 1528.

Having determined that section 177.9(d), and not 177.10(b) is determinative in this case, plaintiffs' uniform practice claim must also fall. 19 C.F.R. § 177.10(b) states that "[a]ny ruling regarding a rate of duty or charge which is published in the Cus-

6. 19 C.F.R. § 177.9(a), (b) (1983) provides in part:

*Effect of ruling letters generally.* A ruling letter issued by the Headquarters Office or the Regional Commissioner, Region II, under the provisions of this part represents the official position of the Customs Service with respect to the particular transaction or issue described therein and is binding on all Customs Service personnel in accordance with the provisions of this section until modified or revoked. In the absence of a subsequent change of practice or other modification or revocation which affects the principle of the ruling set forth in the ruling letter, that principle may be cited as authority in the disposition of transactions involving the same circumstances.

*Application of rulings to transactions*—(1) *Generally.* Each ruling letter is issued on the assumption that all of the information furnished in connection with the ruling request and incorporated in the ruling letter, either directly, by reference, or by implication, is accurate and complete in every material respect. The application of a ruling letter by a Customs Service field office to the transaction to which it is purported to relate is subject to the verification of the facts incorporated in the ruling letter, a comparison of the transaction described therein to the actual transaction, and the satisfaction of any conditions on which the ruling was based....

7. 19 C.F.R. § 177.9(d)(1) (1983) provides:

(d) *Modification or revocation of ruling letters* —(1) *Generally.* Any ruling letter found to be in error or not in accordance with the current views of the Customs Service may be modified or revoked. Modification or revocation of a ruling letter shall be effected by Customs Headquarters by giving notice to the person to whom the ruling letter was addressed and, where circumstances warrant, by the publication of a notice or other statement in the Customs Bulletin.

8. TAA No. 10 was not published pursuant to subsection (b) of section 177.10 but rather under Customs' discretionary authority to disseminate what it considers a significant ruling. *See* 19 C.F.R. § 177.10(a) (1983).

toms Bulletin will establish a uniform practice." TAA No. 10 and TAA No. 40, however, are not within the scope of subsection (b). The publication of TAA No. 10, therefore, created no "uniform practice" within the meaning of section 177.10(b).

■ Plaintiffs further allege that Customs violated its own regulations by applying TAA No. 40 retroactively. Retroactivity of ruling letters is governed by 19 C.F.R. § 177.9(d)(2).[9] Subdivision (ii) of that subsection clearly states that modification and revocation of ruling letters will not be applied retroactively provided the "facts subsequently developed are not materially different from the facts on which the ruling was based." *Id.* § 177.9(d)(2)(ii). This proviso was violated in this case. Upon the completion of a Customs investigation of the Hong Kong made-to-measure clothing industry, it was determined that the trade patterns alleged by the importer, and upon which TAA No. 10 was based, did not correspond to the actual Hong Kong trade patterns. The facts originally given by the importer were not fully accurate, and, therefore, the factual underpinnings of TAA No. 10 were faulty. Such a state of events certainly cleared the way for TAA No. 40 to be applied retroactively under the Customs Regulations, in particular 19 C.F.R. § 177.9(d)(2)(ii).

## CONCLUSION

For the reasons outlined above, the plaintiffs' motion for partial summary judgment is denied. The defendants' motions to dismiss are denied. Defendants' cross-motion for partial summary judgment is granted.

Judgment will enter accordingly.

## JUDGMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED:

1. that plaintiff's motion for partial summary judgment is denied;
2. that defendant's motions to dismiss count I of the complaint, to dismiss the action as to plaintiff E.C. McAfee Company, to dismiss for failure to state a claim upon which relief can be granted, and to dismiss as to plaintiff American Air Parcel unless its surety is substituted as plaintiff are denied;
3. that defendants' motion for partial judgment on the pleadings is denied;
4. that defendants' motion to have this action designated as a test case under Rule 84 of the Rules of the Court of International Trade is granted;
5. that defendants' cross-motion for partial summary judgment is granted as to count I of the plaintiffs' complaint respecting entry No. 337670, insofar as it relates to the alleged illegal revocation of TAA No. 10.

■

---

9. 19 C.F.R. § 177.9(d)(2) provides:

*Effect of modification or revocation of ruling letters.* The modification or revocation of a ruling letter will not be applied retroactively with respect to the person to whom the ruling was issued, or to any person directly involved in the transaction to which that ruling related, *Provided:*

(i) The request for a ruling contained no misstatement or omission of material facts,

(ii) The facts subsequently developed are not materially different from the facts on which the ruling was based,

(iii) There has been no change in the applicable law,

(iv) The ruling was originally issued with respect to a prospective transaction, and

(v) All of the parties involved in the transaction acted in good faith in reliance upon the ruling and retroactive modification or revocation would be to their detriment. Nothing in this paragraph will prohibit the retroactive modification or revocation of a ruling with respect to a transaction which was not prospective at the time the ruling was issued, inasmuch as such a transaction was not entered into in reliance on a ruling from the Headquarters Office or the Regional Commissioner, Region II.