**AMERICAN AIR PARCEL FORWARDING COMPANY, LTD., et al., Plaintiffs,**

v.

**UNITED STATES, et al., Defendants.**

**Court No. 83-7-00995.**

United States Court of International Trade.

March 20, 1987.

McLaughlin & Stern, Ballen and Ballen (S. David Harrison), New York City, for plaintiff, American Air Parcel Forwarding Co., Ltd.

Sandler & Travis (Leonard Rosenberg), Washington, D.C., for plaintiffs, St. Paul Fire and Marine Ins. Co. and E.C. McAfee Co.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office (Kenneth N. Wolf), New York City, for defendants.

### MEMORANDUM OPINION AND ORDER

DiCARLO, Judge:

Plaintiffs contest the denial of a protest challenging the valuation by the United States Customs Service (Customs) of apparel made in Hong Kong for sale in the United States. The Court has jurisdiction under 28 U.S.C. § 1581(a) (1982). The action is dismissed.

The parties have submitted a stipulation which constitutes the facts in this case. The merchandise consists of a single entry of made-to-measure wearing apparel. The question presented is whether Customs properly determined the transaction value of the merchandise under section 402 of the Tariff Act of 1930, as amended by section 201 of the Trade Agreements Act of 1979, 19 U.S.C. § 1401a, which states in part that

> The transaction value of imported merchandise is the price actually paid or payable for the merchandise when sold for exportation to the United States,....

19 U.S.C. § 1401a(b). For prior rulings in this case, see 7 CIT 231, 587 F.Supp. 550 (1984) and 6 CIT 146, 573 F.Supp. 117 (1983).

American customers purchase the made-to-measure clothing from a distributor in Hong Kong. The customers select fabric and place orders with the distributor either by mail order or by visiting retail stores in Hong Kong. The distributor supplies fabric to a Hong Kong tailor, which manufactures the garments and returns finished garments to the distributor. The opera-

tions performed by the tailor are defined in the stipulation as follows:

> *Cut, Make and Trim ("CMT")* —CMT is the shorthand for the operations which involve the cutting of the Fabric to the specifications and measurements of the Customer, the sewing (making) of the parts which have been cut, and the supplying of the Trim for the particular garment. The CMT operations, when taken together, approach the cost or value of the Fabric.

After it receives the finished garments, "the distributor packs the garment, addresses the package, and if necessary, obtains quota and visa, and gives the package to a freight forwarder." Stipulation at 2–3. The importer of record is American Air Parcel Forwarding Company, Ltd. (American Air Parcel), a Hong Kong corporation which "consolidates individual shipments of wearing apparel in Hong Kong for transport to the United States." Complaint at 1–2. American customers are individual consignees who "are required to pay the delivering party any duty tendered by or on behalf of [American Air Parcel] and a small handling charge." Complaint at 2.

Customs determined "the price actually paid or payable for the merchandise when sold for exportation to the United States" under section 1401a(b), to be the price paid by American purchasers to the Hong Kong distributor. Plaintiffs say that the merchandise should be valued at the price paid by the Hong Kong distributor to the tailor in Hong Kong, plus the cost or value of the fabric furnished to the tailor by the distributor and the packing costs.

Plaintiffs claim that Customs is bound to accept their proposed valuation method based on two Customs rulings. *See Customs Valuation Under the Trade Agreements Act of 1979*, Ruling No. 8 (TAA No. 8), and Ruling No. 10 (TAA No. 10). Such rulings represent the position of Customs with respect to applicable merchandise under described circumstances, until the rulings are modified or revoked. 19 C.F.R. § 177.9(a), (b). TAA No. 10, which governed the valuation of made-to-measure

clothing from Hong Kong, was revoked by Customs in TAA No. 40. A judge of this Court ruled that the retroactive revocation of TAA No. 10 was proper since the facts on which Customs issued the ruling contained material inaccuracies. 7 CIT at 236, 587 F.Supp. at 556; *see* 19 C.F.R. § 177.-9(d)(2)(ii). Plaintiffs now ask the Court to reverse that ruling on the ground that the stipulation shows facts corresponding to the facts on which TAA No. 10 was originally based.

▪ TAA No. 10 states in part:
The tailors are responsible for all aspects of the production of the garments, including the purchase, for their own account, of the required fabrics from piece-good houses. The tailors then sell the completed garments to the distributors.

The stipulation includes these facts:

> The Master Tailor and Tailoring Workshops have no ownership interest in the Fabric.
>
> . . . .
>
> The Fabric necessary to make the garment is either cut from the roll or bolts in the store of the Distributor or it is ordered by the Distributor for its account from a Fabric house for delivery to the Tailoring Workshop.

Since the facts set forth in TAA No. 10 include a sale of merchandise by the tailor and the stipulation of facts does not, the Court finds these factual circumstances are materially different and sustains the prior ruling by the Court.

Plaintiffs argue that Customs also based transaction value on a CMT charge in another Customs ruling, TAA No. 8. That ruling has no bearing in this case, however, since it does not involve the same merchandise and circumstances present here. *See* 19 C.F.R. § 177.9(b).

Plaintiffs also argue that CMT charges may be deemed "the price actually paid or payable for the merchandise" under section 1401a(b) in light of legislative history. They point to the following passage from the Statements of Administrative Action, H.R.Doc. No. 153, Pt. II, 96 Cong., 1st

Sess. 442, *reprinted in* 1979 U.S.Code Cong. & Ad.News 381, 705:

> In some cases, the price actually paid or payable may represent an amount for assembly of merchandise in which the seller has no interest in the merchandise other than as assembler. In such cases the price actually paid or payable, adjusted by the value of the components and required adjustments, will form the basis for the transaction value.

Plaintiffs contend that the CMT operation is similar to an assembly operation and therefore can be used to determine transaction value under section 1401a(b).

■ Customs regulations demonstrate that this case is not one where assembly costs may serve as the "price actually paid or payable" in determining transaction value. Transaction value generally is arrived at by determining the price paid for the goods when sold for exportation. 19 C.F.R. § 152.103(a). "In determining transaction value, the price actually paid or payable will be considered without regard to its method of derivation." *Id.* § 152.-103(a)(1). The regulations provide another means of determining the price paid or payable when there is no actual sale of merchandise, but a sale of services:

> (3) *Assembled merchandise.* The price actually paid or payable may represent an amount for the assembly of imported merchandise in which the seller has no interest other than as the assembler. The price actually paid or payable in that case will be calculated by the addition of the value of the components and required adjustments to form the basis for the transaction value.

19 C.F.R. § 152.103(a)(3). The regulation provides an example of when this subsection may apply:

> *Example 1.* The importer previously has supplied an unrelated foreign assembler with fabricated components ready for assembly having a value or cost at the assembler's plant of $1.00 per unit. The Importer pays the assembler 50¢ per unit for the assembly. The transaction value for the assembled unit is $1.50.

Since there is a sale of the exported merchandise between the Hong Kong distributor and American customers in this case, the price paid or payable is determined under subsection (1) of the regulation, and there is no reason to resort to subsection (3).

■ The requirement in section 1401a(b) that the sale used to determine transaction value be one "for exportation to the United States" also precludes plaintiffs' proposed valuation method. Since the tailor deals only with the distributor, and "may or may not know the identity or address of the [c]ustomer," stipulation at 5, the Court holds that the transaction between tailor and distributor is not one "for exportation to the United States." *See Mitsui & Co., Ltd. v. United States,* 68 Cust.Ct. 266, 270 (1972) (merchandise not "for exportation to the United States" under former section 402(b) unless sold "in such a manner that the merchandise in question is irrevocably and undeniably, by reason of its nature and mode of handling, destined for export to the United States.")

Plaintiffs' reliance on *United States v. Getz Bros. & Co.,* 55 CCPA 11, C.A.D. 927 (1967) and *R.J. Saunders & Co. v. United States,* 42 CCPA 55, C.A.D. 570 (1954) is misplaced. Valuations in those cases, involving transactions between parties in the country of exportation, were based on sales of merchandise destined for exportation to the United States.

■ The Court holds that Customs correctly determined that the price paid by American customers for the imported merchandise constitutes transaction value under section 1401a. The action is dismissed. Judgment will be entered accordingly. So ordered.