**HEMSCHEIDT CORPORATION,**
Plaintiff–Appellee,

v.

**The UNITED STATES, Defendant–Appellant.**

No. 94–1511.

United States Court of Appeals,
Federal Circuit.

Dec. 18, 1995.

Robert T. Wray, Robert Wray Associates, Washington, DC, argued for plaintiff-appellee.

James A. Curley, Commercial Litigation Branch, Department of Justice, New York City, argued for defendant-appellant. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director and Joseph I. Liebman, Attorney in Charge. Also on the brief was Jacob D. Diamond, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, New York City, of counsel.

Before NEWMAN, CLEVENGER, and BRYSON, Circuit Judges.

CLEVENGER, Circuit Judge.

The United States appeals from the decision of the United States Court of International Trade granting Hemscheidt Corporation's (Hemscheidt) motion for summary judgment, and holding that the change in the classification under which duties for Hemscheidt's imports are levied was not effective because Customs failed to provide notice as required by 19 U.S.C. § 1315(d) (1994). We affirm.

I

Hemscheidt imports self-propelled hydraulic shield supports for use in underground coal mining machines. The mining machines have three components: (1) a cutting device for coal cutting from the face of a coal deposit; (2) a conveyer, located under the cutter, for removing the cut coal; and (3) a shield support for moving the cutting device, and protecting the whole machine from the newly exposed roof of the coal face. To function properly, the machine requires all three components.

For about twenty years, Hemscheidt paid a tariff for its imported shield supports under the provisions of Item 664.08 of the Tariff Schedule of the United States (TSUS). Item 664.08 of TSUS covered excavating, boring and extracting machinery for earth, minerals or ores, and parts thereof. On January 1, 1989, the Harmonized Tariff Schedule of the United States (HTSUS) went into effect. Under HTSUS, heading 8430 covers excavating, extracting or boring machinery for earth, minerals or ores, while heading 8431 covers parts for such machinery. For the next three years Customs liquidated Hemscheidt's entries of shield supports under heading 8430, HTSUS, at a rate of 2.5% ad valorem, the same rate as had been applied under Item 664.08. Between August 29, 1990, and January 29, 1991, Hemscheidt imported four shipments totalling 290 shield supports. Without notice, in April 1991, Customs discarded its practice of classifying the shield supports under heading 8430, and instead liquidated these four entries under heading 8479.90 of HTSUS at a rate of 3.7% ad valorem. Heading 8479 is a basket provision covering machines having individual functions and not specified or included elsewhere in Chapter 84 of the HTSUS. Customs demanded that Hemscheidt pay the difference in duties plus interest. Hemscheidt protested the reclassification of these four entries, and subsequently filed suit, arguing that the shield supports should have remained classified under heading 8430 with the lower duty rate. Hemscheidt moved for summary judgment in October 1993.

## II

This case, and in particular this appeal, requires us to interpret 19 U.S.C. § 1315(d). In relevant part, the statute reads:

No administrative ruling resulting in the imposition of a higher rate of duty or charge than ... shall ... have been applicable to imported merchandise under an established and uniform practice shall be effective ... prior to the expiration of thirty days after the date of publication in the Federal Register of notice of such ruling.... This subsection shall not apply with respect to increases in rates of duty resulting from the enactment of the Harmonized Tariff Schedule of the United States to replace the Tariff Schedules of the United States.

The statute on its face bars the levy and collection of increases in duties when an established and uniform practice exists taxing the particular imported goods at a lower rate, unless the higher rate has been fixed by an administrative ruling, notice of which has been given as provided in the statute. No such notice issued in this case. Such notice, however, is not required when the increased rate "results from" the enactment of the HTSUS.

The United States claims that the increased duties in this case resulted from the enactment of the HTSUS. Hemscheidt disagrees. It asserts that Customs merely changed its mind about the nature of the goods in question, deciding for the first time that the shield supports are not extracting machinery. Even if the terms of the HTSUS may permit administrative reclassification of the goods, Hemscheidt argues that such reclassification is not itself compelled by the terms of HTSUS. Absent such compulsion, Hemscheidt thinks that the notice provision of section 1315(d) remains in full force and effect.

## III

On summary judgment, the parties agreed that before the enactment of HTSUS there existed an established and uniform practice of classifying the shield supports as "extracting machinery" under heading 664.08 of the TSUS.

The Court of International Trade framed the issue as whether, as a matter of law, the established and uniform practice of classifying the shield supports as extracting machinery survived the enactment of the HTSUS. If it did, the court then asked whether Hemscheidt was afforded proper notice of the change as required by the statute. The court noted that Hemscheidt had to overcome the presumption that Customs' reclassification was correct. The court then analyzed several factors in determining whether the established and uniform practice survived enactment of the HTSUS, using the framework provided in *Beloit Corp. v. United States,* 843 F.Supp. 1489, 1496–1502 (Ct.Int'l Trade 1994).

Initially, the court compared the plain language of the relevant old TSUS and new HTSUS sections. Heading 664.08, TSUS, included "extracting machinery ... whether stationary or mobile, for earth, minerals, or ores," and parts thereof. In comparison, heading 8430.50, HTSUS, includes "extracting ... machinery ... for earth, minerals, or ores ... Other machinery, self-propelled." Also, heading 8431, HTSUS, names "[p]arts suitable for use ... with the machinery of headings 8425 to 8430." The court noted the common language of these provisions. In contrast, Customs' chosen heading 8479, HTSUS, includes "[m]achines and mechanical appliances having individual functions, not specified or included elsewhere in this chapter; parts thereof." Finding that there was no common language between TSUS 664.08 and HTSUS 8479, the court noted that the new HTSUS "basket provision" requires that the import have "individual function." The court concluded that "[t]he language from the prior TSUS classification was carried over, nearly verbatim, in [h]eadings 8430 and 8431 HTSUS." Thus, Customs' reclassification was a "noticeable departure" from the established and uniform classification.

Next, the court reviewed the explanatory notes for HTSUS 8479 which specify that the basket provision should be used only when the import cannot be classified as anything else. The court also noted that none of the

other subheadings under 8479 relate to mining equipment, while 8430 clearly addresses mining machinery. The court then turned to the 1988 International Trade Commission Report, which contains a conversion chart guide that cross-references the old subheading 664.08, TSUS, with the new HTSUS headings, 8430 and 8431.

Each aspect of the court's analysis supported Hemscheidt's view that Customs' use of HTSUS 8479 resulted from a change of mind about the nature of the machinery in question, and not from an explicit statutory command in the HTSUS to deem the machinery as sufficiently removed from the mining arts to warrant its inclusion in the basket provision. Indeed, the very purpose of the court's extended analysis was to determine whether, in a given case, as a matter of law the HTSUS forces Customs to discard an existing and uniform classification practice in response to an explicit legislative command in the HTSUS. *See Thomas Equip. Ltd. v. United States,* 881 F.Supp. 611, 614 (Ct.Int'l Trade 1995).

The court held as a matter of law that because the established and uniform practice survived the enactment of HTSUS, section 1315(d) required Customs to publish notice of its reclassification in the *Federal Register* thirty days before its effective date. As Customs failed to publish notice, the court entered judgment in favor of Hemscheidt on July 8, 1994.

## IV

 We review de novo the lower court's grant of summary judgment. *Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1575 (Fed.Cir.1994). We also conduct independent review of statutory interpretation. *Koyo Seiko Co. v. United States,* 36 F.3d 1565, 1570 (Fed.Cir.1994).

On appeal, the United States argues that the court misinterpreted section 1315(d). The United States notes that, well after the enactment of the HTSUS, Customs revisited the subject of the correct classification of Hemscheidt's shield supports. Customs then concluded that the previous assessment of the articles as extracting machines was incor-

rect. The change of mind apparently has to do with the current view of Customs that the principal purpose of the supports is to protect the extracting segment of the unitary machine to which the support is integrated. As such, Customs now considers that the supports cannot be classified as extracting machinery, and must be levied under the basket provision. Since the basket provision is found in the HTSUS, the United States argues, as it did below, that an existing and uniform classification practice cannot control classification of merchandise if the classification can be said to be "governed by" the HTSUS. In short, the United States contends that no notice of reclassification need be given under section 1315(d) when the reclassification is premised on the HTSUS.

Hemscheidt, in response, argues that the interpretation of section 1315(d) proffered by the United States will neuter the notice requirement of the statute. If any reclassification proposed under the authority of the HTSUS is one "resulting from" the enactment of the HTSUS, no established and uniform classification practice under the TSUS will survive enactment of the HTSUS, and Customs will be free to reclassify goods without regard for section 1315(d). To avoid that result, Hemscheidt contends that escape from the notice requirement in the statute must be narrowly restricted to classification changes that are expressly mandated by HTSUS. Thus, while a change in an established and uniform TSUS classification may be sustained as permissible under the HTSUS, such changes—unlike those mandated by the statute—can only be made in compliance with section 1315(d).

## V

 Statutory interpretation begins with the language of the statute. Language unmistakably certain on its face ends our inquiry. *Chaparral Steel Co. v. United States,* 901 F.2d 1097, 1100–01 (Fed.Cir.1990) (citations omitted). We think that the meaning of "resulting from" in section 1315(d) is clear on its face. According to VIII *Oxford English Dictionary* 557 (1970) "result" means "to arise as a consequence, effect, or conclusion *from* some action." Clearly then,

"resulting" requires causation. A causal link is also required by Webster's definition of "result." *Webster's Third New Int'l Dictionary* 1937 (1976).

The facts of this case, on which the Court of International Trade conducted its analysis, amply demonstrate that the reclassification of the hydraulic shield supports in this case is not caused by, in the sense of a mandate, the enactment of the HTSUS. Nothing in the HTSUS indicates that Congress instructed Customs to cease its established and uniform classification practice regarding the subject articles. Indeed, the nearly identical language in TSUS 664.08 and HTSUS 8430 argues forcefully to the contrary, each covering self-propelled machinery while the back-up basket provision urged by Customs does not.

Reading the "resulting from" language in its context provides a full illustration of the purpose of section 1315(d). International trade prospers best when the participants can rely on established rules and regulations. The rate of duty necessarily affects the market price of dutiable imported goods. An established and uniform practice provides notice of how an entry will be dutied. *See Heraeus–Amersil, Inc. v. United States,* 795 F.2d 1575, 1582 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). Reliance interests created by such practices can be exercised, subject to the knowledge that a change in such a practice will be preceded by notice in the *Federal Register.*

■ Were we to read "resulting from" contrary to its plain meaning to exclude the causal factor, as the United States urges, expectation interests built on established and uniform classification practices would be defeated. The element of certainty which section 1315(d) contributes to the marketplace would be lost. We reject the interpretation offered by the United States, and hold that the plain meaning of the statute prevails. Reclassifications under the HTSUS that nullify established and uniform TSUS classifications are subject to the notice requirements of section 1315(d), unless the reclassification is itself compelled by the terms of the HTSUS statute.

In addition to the common sense and legal sense of our interpretation of "resulting from," we note that not much seems to be at stake from Customs' monetary point of view. Our ruling deprives the fisc of a single "free levy" by Customs of an increased rate of duty, assuming that the changed classification, now premised on the HTSUS, survives a legal challenge. Even Hemscheidt points out that if Customs wishes to levy at the increased rate, it is burdened only by the making of a classification according to the rules and giving 30 days notice of its decision. The loss of income to the federal treasury from the "free levy," in the large, must be small compared to the price of destruction of established and uniform classification practices upon which predictable international trade depends.

For these reasons, the decision of the United States Court of International Trade is

**AFFIRMED.**