**JEWELPAK CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Slip Op. 96–189.**
**Court No. 94–04–00230.**

United States Court of
International Trade.

Nov. 27, 1996.

344

Fitch, King and Caffentzis, (Peter J. Fitch, James Caffentzis), New York City, for plaintiff.

Frank W. Hunger, Assistant Attorney General, Washington, DC; Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Barbara Silver Williams); United States Customs Service (Chi Choy), of counsel, New York City, for defendant.

**I**

## INTRODUCTION

WALLACH, Judge:

Plaintiff, Jewelpak Corporation ("Jewelpak"), claims that the United States' Customs Service ("Customs") changed its position in connection with the classification of

"presentation boxes",[1] and that the Court should declare the change invalid for failure to publish notice in the Federal Register.[2] Plaintiff also says Customs changed the classification of the boxes based on an amendment to the Explanatory Notes to the Harmonized System. It argues that without action by the International Trade Commission ("ITC") and the President to amend the Harmonized Tariff Schedule of the United States ("HTSUS"), that change would be improper.

Plaintiff moved for summary judgment on its second and third causes of action. Defendant cross-moved on those causes. Plaintiff's motion is denied and Defendant's granted. The Court finds Customs had no "position" regarding classification of the presentation boxes which would require publication of notice in the Federal Register before reclassification. It also finds Customs properly considered the amended Explanatory Note in reclassifying the presentation boxes, and did not need action by the ITC or the President. Jurisdiction is proper under 28 U.S.C. § 1581(a).

## II

## BACKGROUND

It is uncontested that under the Tariff Schedules of the United States ("TSUS"), the boxes were classified according to their component of chief value. Plaintiff's Mem. In Support Of Its Motion For Summary Judgment at 7 ("Motion"); Defendant's Cross–Motion for Partial Summary Judgment at 1 ("Cross–Motion"). Upon enactment of the HTSUS, effective January 1, 1989, they were classified according to the constituent material that gave them their essential character, under to General Rule of Interpretation 3(b). HRL 951028, Mar. 3, 1993, see Ex. 7 to Motion.

Even before the HTSUS was enacted, however, the Harmonized System Committee ("HSC") considered amending the Explanatory Notes to the Harmonized Tariff System ("HTS") to include a description of "jewelry boxes". Initially, the HSC proposed a modification to provide that:

> The term "jewelry boxes" covers not only boxes specially designed for keeping jewelry, but also small, lidded containers (with or without hinges) of the type in which individual articles of jewelry are normally sold.

*Amendment of Heading 42.02 to Provide for the Inclusion of Articles Wholly or Mainly Covered with Paper (Amendment of Heading 42.02)*, HSC, 2nd Sess., Aug. 1, 1988, Doc. 34.701 E, Annex IJ/2, see Ex. A to Cross–Motion. The United States opposed that language and urged reconsideration. It expressed its concern that the amendment would subject some presentation boxes to textile import restraints. *Amendment of Heading 42.02*, HSC, 3rd Sess., Apr. 3, 1989, Doc. 35.327 E, see Ex. 11 to Motion. Eventually, the amendment to the Explanatory Note, effective on January 1, 1990, read:

> The term "jewelry boxes" covers not only boxes specially designed for keeping jewelry, but also similar lidded containers of various dimensions (with or without hinges or fasteners) specially shaped or fitted to contain one or more pieces of jewelry and normally lined with textile material, of the type in which articles of jewelry are presented and sold and which are suitable for long-term use.

Amended Explanatory Note to Heading 42.02.

Customs relied, *inter alia*, upon the amended Explanatory Note, and found that because the merchandise was not "suitable for long-term use", it fell outside the defini-

---

**1.** Presentation boxes are used to display and transport jewelry, such as rings, bracelets, necklaces, and watches, or other non-jewelry items. The boxes are either plastic or metal, and are covered with either textile materials or plastic sheeting. They are given free to purchasers of jewelry.

**2.** Customs classified the presentation boxes as "jewelry boxes" under subheading 4202.92.90, HTSUS, with a 20 percent *ad valorem* duty rate. Plaintiff claims in its first cause of action that its merchandise is not properly considered "jewelry boxes". The Court will enter a scheduling order for the first cause of action after it decides these dispositive motions.

tion of "jewelry boxes" in Heading 4202, HTSUS.[3]

In 1992, Customs notified Jewelpak that it was considering revoking HRLs 086186 and 089830, and requested comments. Letter of Jan. 27, 1992, see Ex. 10 to Motion. Jewelpak opposed revocation of the rulings. See HRL 951028. In revoking HRLs 086186 and 089830, Customs said the Explanatory Notes are "relevant as a guideline in determining the scope of a heading," HRL 951028 at 3, determined that the merchandise was capable of long-term use, and classified it under Heading 4202, HTSUS. Id.

## III

### DISCUSSION

#### A

**Summary Judgment Is Appropriate Because There Is No Genuine Issue As To Any Material Fact And The Government Is Entitled To Judgment As A Matter Of Law**

This Court may grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." USCIT R. 56(d).

The parties agreed at oral argument that there is a genuine issue of material fact which precludes summary judgment on the first cause of action. Discovery was stayed with regard to this action pending the adjudication of the second and third causes of action. As a result, it is not practicable nor possible pursuant to USCIT R. 56(e) for the Court to ascertain whether material facts are controverted in the first cause of action. However, the Court finds that there are no genuine issues as to any material fact in the

second and third causes of action, and that the Government is entitled to partial summary judgment as a matter of law.[4]

#### B

**The Customs Service Was Not Required To Publish Notice In The Federal Register Of Its Intent To Classify The Presentation Boxes Under A Different Provision Of The HTSUS**

Jewelpak claims that Customs had an official "position" regarding the classification of the presentation boxes. According to Jewelpak, Customs violated 19 C.F.R. § 177.10(c)(2) when it failed to follow proper notice and comment procedures before revoking HRLs 086186 and 089830. For the reasons that follow, Jewelpak's arguments fail.

Congress requires that imported merchandise be correctly classified in a uniform manner. See 19 U.S.C. § 1502(a). Customs has implemented regulations to ensure uniform classification by establishing official classification "positions". They let interested parties comment when Customs is considering changing a position if the result will be a restriction or prohibition. Customs' regulation provides that:

> Before the publication of a ruling which has the effect of changing a position of the Customs Service and which results in a restriction or prohibition, notice that the position (or prior ruling on which the position is based) is under review will be published in the FEDERAL REGISTER and interested parties given an opportunity to make written submissions with respect to the correctness of the contemplated change....

19 C.F.R. § 177.10(c)(2). Thus, to require Customs to publish notice, Plaintiff must demonstrate 1) that Customs had a position on the subject merchandise, and 2) that a

---

3. Customs subsequently classified most containers similar to the subject merchandise as "jewelry boxes" under Heading 4202. Headquarter Ruling Letter ("HRL") 951028, Mar. 3, 1993, see Ex. 7 to Motion. However, in HRLs 086186 (January 2, 1990) and 089830 (July 26, 1991), issued to Jewelpak, Customs classified boxes,

identical to those here, using the essential character test.

4. The presumption of correctness, found in 28 U.S.C. § 2639(a)(1), applies to Customs' factual determinations only. Goodman Mfg., L.P. v. United States, 69 F.3d 505, 508 (Fed.Cir.1995).

change would result in a restriction or prohibition.

### 1

### Customs Did Not Have A "Position" Regarding The Classification Of The Presentation Boxes

█ Plaintiff argues Customs had a "position" regarding classification of the presentation boxes, and that publication of notice was required before any change in classification would be effective. Plaintiff says Customs' position was that the boxes should be classified by their essential character, and not as "jewelry boxes" within the meaning of Heading 4202.

According to Plaintiff, Customs' "position" is found in a March 13, 1989 memorandum from the Director, Commercial Rulings Division, Office of Regulations and Rulings ("Director's Memorandum"), disseminated through the Customs Information Exchange ("CIE") to the various ports in June, 1989. Ex. 8 to Motion. The memorandum discussed the consequences of amending the Explanatory Note's definition of "jewelry boxes", and stated "... this decision [to continue to classify in chapter 39, 73, or 48 using the essential character test] does not represent a change in the current Customs position...." *Id.* at 2. As further support for its "position" argument, Plaintiff points to HRL 086186 of Jan. 2, 1990, and HRL 089830 of Jan. 26, 1991, in which Customs classified its boxes under Plaintiff's claimed provisions after it determined essential character based on component materials.

Plaintiff also cites *Hemscheidt Corp. v. United States,* 72 F.3d 868 (Fed.Cir.1995), arguing by analogy to *Hemscheidt* that the classification of the presentation boxes was subject to a "uniform and established practice" ("UEP") by Customs. In *Hemscheidt,* the Court of Appeals for the Federal Circuit ("CAFC") interpreted 19 U.S.C. § 1315(d) which provides in part:

No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the Federal Register of notice of such ruling....

19 U.S.C. § 1315(d).

The CAFC interpreted the provision as barring the levy and collection of increases in duties in cases where an established and uniform practice exists concerning the rate of duty, unless an administrative ruling mandates the higher rate, notice of which is given in accordance with the statute. *Hemscheidt,* 72 F.3d at 870. There, both parties agreed an established and uniform classification practice had existed under the TSUS. *Id.* The CAFC held that "[r]eclassifications under the HTSUS that nullify established and uniform TSUS classifications are subject to the notice requirements of section 1315(d), unless the reclassification is itself compelled by the terms of the HTSUS statute." *Id.* at 872.

The Court rejects Plaintiff's *Hemscheidt* argument. Plaintiff has failed to meet the stringent requirements for establishing a UEP. Although under the TSUS Plaintiff's presentation boxes were classified as "retail packaging", since 1990 Customs consistently classified merchandise similar to the subject merchandise under Heading 4202 as "jewelry boxes", with few exceptions.[5] Establishment of a "position" within the meaning of 19 C.F.R. 177.10(c)(2) has stringent notice requirements, set forth *supra* at pages 346–347. Since Customs had no "position" regarding the presentation boxes, publication of notice was not required.[6]

Thus, in *Superior Wire v. United States,* 7 Fed.Cir. (T) 43, 867 F.2d 1409 (1989), the CAFC rejected an argument that a letter

---

**5.** *See* Ex. E to Cross–Motion (containing HRL 086393, HRL 087787, NYRL 859318, NYRL 862417, NYRL 863339, HRL 088571, HRL 950703, NYRL 859141, and NYRL 862128).

**6.** Plaintiff did not cite to any location in the Customs Bulletin where Customs published a ruling concerning its "position" on the classification of the presentation boxes.

ruling, available to the public on microfiche but not published in the Customs Bulletin, constituted a "position" changeable only after notice in the Federal Register and public comment. *Id.* at 46–47, 867 F.2d at 1413.

In *Arbor Foods, Inc. v. United States,* 9 CIT 119, 607 F.Supp. 1474 (1985), this Court stated that:

> Customs' establishment of a "position" would be along the same lines as that of an "established and uniform practice" under 19 U.S.C. § 1315(d) (1982). In that respect, such a "position" or "practice" would require uniform liquidations among the many ports over a period of time.

*Id.* at 123, 607 F.Supp. at 1478. *See also Nat'l Juice Prods. Assoc. v. United States,* 10 CIT 48, 628 F.Supp. 978 (1986) (*"National Juice"*) (finding that a "position" did exist because Customs published several rulings in the Customs Bulletin that supplied a factually explicit description of a position in effect for at least eight years.).

In addition, Customs claims that "[u]ntil recently, the Customs Service **had no established practice or position** regarding the classification of such merchandise." Letter from Harvey B. Fox, Director of the Office of Regulations and Rulings, June 22, 1993, at 1, Ex. F to Cross–Motion (emphasis added). No cognizable evidence submitted by Plaintiff refutes that position.[7]

Finally, before the ITC, Jewelpak admitted that "[i]n 1991, classification in regard to such containers may have varied...." Post Hearing Brief on Behalf of Jewelpak Corp. before ITC, Invest. no. 1205–3 at 4, Ex. G to Cross–Motion. In view of the substantial proof which must be shown before a "position" exists within the meaning of 19 C.F.R. § 177.10(c)(2), *see Arbor Foods, supra,* Plaintiff's argument fails.

---

7. Plaintiff's reliance on the Director's Memorandum is misplaced. Defendant points out that the CIE provided the Secretary of the Treasury with a way of:

> collecting, and distributing from a common center, data concerning values and **advisory** classifications, and such other information as will assist **customs officers** in the performance of their duties; **such data shall be construed as advisory only, and not controlling by customs**

## 2

## There Was No Change Of Position As Defined By 19 C.F.R. § 177.10(c)(2)

■  Customs' issuance of HRL 951028 did not change a position within the meaning of 19 C.F.R. § 177.10(c)(2). Customs used the same legal test for classifying the merchandise in HRL 951028 and the two revoked headquarter's rulings. All three examined the merchandise to determine whether it was suitable for long term use. The only "change" that occurred was Customs' factual determination that the merchandise was suitable for long term use.

Customs has the authority to reach a different factual conclusion concerning the presentation boxes. Customs' regulations provide that:

> Any ruling letter found to be in error or not in accordance with the current views of the Customs Service may be modified or revoked. Modification or revocation of a ruling letter shall be effected by Customs Headquarters by giving notice to the person to whom the ruling letter was addressed....

19 C.F.R. § 177.9(d)(1).

■  In addition, it has been recognized that:

> ... there is no rule of administrative stare decisis. Agency practice, once established, is not frozen in perpetuity. Agencies frequently adopt one interpretation of a statute and then, years later, adopt a different view. As long as the new interpretation is consistent with congressional intent, an agency may make a "course correction."

*Toyota Motor Sales, U.S.A., Inc. v. United States,* 7 CIT 178, 192–93, 585 F.Supp. 649, 661 (1984) (citations omitted), *aff'd based*

> **officers,** in the appraisement and classification of merchandise.

T.D. 43246, at 402 (March 3, 1929) (emphasis added).

In view of this purpose, the Court agrees with Defendant's conclusion that the "CIE memoranda do not create a Customs 'position,' much less, one that should be relied upon by the public for purposes of 19 C.F.R. § 177.10(c)(2)." Cross–Motion at 13.

*upon the opinion below,* 3 Fed.Cir. (T) 93, 753 F.2d 1061 (1985).

Customs was free, upon consideration, to alter its classification. Customs complied with its regulations and gave notice to Jewelpak, as the "person to whom the ruling letters [were] addressed", that Customs was considering revocation of the HRLs. This case is simply a revocation of an HRL by Customs.

### 3

### The Merchandise Was Not Subjected To Any Restrictions

■ As stated above, notice must be published in the Federal Register when Customs has a classification position and is considering changing it in a way that will subject the article to a restriction or prohibition. 19 C.F.R. § 177.10(c)(2). Even if a position had existed, Plaintiff has not demonstrated that Customs' classification of the presentation boxes in Heading 4202 resulted in a restriction or prohibition.

Plaintiff attempted to prove that a restriction or prohibition would result from the change in classification by citing the Director's Memorandum that stated: "classification of these containers as jewelry boxes in heading 4202 would have severe consequences on the administration of quota restraint agreements...." Ex. 8 to Motion at 2.

Plaintiff does not, however, contravene [8] Customs' statement that:

> [i]n order to prevent these [presentation] boxes from being subject to import quotas, quantitative restraints, or other similar im-

port restraints if classified under 4202.92.90, HTSUS, the Committee for the Implementation of Textile Agreements made visa waivers available to importers, until the statistical breakouts under heading 4202, HTSUS, became effective [to remove the subject merchandise from any textile restraints].

Cribb's Supp. Declaration at ¶ 4, attached to Defendant's Mem. in Reply to Plaintiff's Oppos. To Cross–Motion; *see* Affidavit of Peter Fitch, Exh. 14 to Plaintiff's Reply to Cross Motion ("Plaintiff's Reply") (admitting that waivers of the textile restraint requirements were obtained).[9] Thus, any change of position would not have resulted in a restriction or prohibition so that Customs was not required to publish notice in the Federal Register.

### 4

### Plaintiff Has Shown No Prejudice As A Result Of The Failure Of Customs To Publish Notice In The Federal Register

■ Even if Customs were required to publish a notice in the Federal Register, because Jewelpak can demonstrate no prejudice, it cannot rely on 19 C.F.R. § 177.10(c)(2). As said in *National Juice:*

> Although defendant failed to publish the required notice of its change in position, this omission will only affect the ruling if it results in prejudice to the plaintiff.... Plaintiffs [in this case] are not prejudiced by the failure to publish notice as to this issue because, as is obvious, plaintiffs fully

---

**8.** USCIT R. 56(e) allows the Court to ascertain what material facts are actually and in good faith controverted when a case is not fully adjudicated on motion. If the Court had found that Plaintiff contravened Defendant's representation concerning the restrictions applicable to the presentation boxes, it would have directed further proceedings on this issue. However, the Court finds that Plaintiff has not presented evidence that made a prima facie showing that there was a restriction applied to the boxes, and in the absence of such evidence, this argument fails. Defendant has presented evidence that there was no restriction, and Plaintiff has failed to controvert that evidence. Therefore, the Court concludes that there is no genuine issue of material fact in dispute with regard to this issue.

**9.** To the extent that Plaintiff is arguing that the Government is estopped from changing its position, the Court notes that the doctrine of equitable estoppel is not generally available against the government. *See generally Old Republic Ins. Co. v. United States,* 10 CIT 589, 591–93, 645 F.Supp. 943, 945–47 (1986) (discussing the doctrine of equitable estoppel). If the Court had found a UEP regarding the classification of the boxes, the Government would have in effect been estopped from changing the classification until notice had been published in accordance with 19 U.S.C. § 1315(d).

participated in the administrative process. Furthermore, comments from the public at large cannot change the essentially legally correct result.

10 CIT at 65–66, 628 F.Supp. at 994. *See also Lois Jeans & Jackets, U.S.A., Inc. v. United States,* 5 CIT 238, 243, 566 F.Supp. 1523, 1527–28 (1983) ("non-prejudicial procedural defects in agency action should be ignored . . . [unless they] are so fundamentally prejudicial as to constitute a deprivation of due process.")

Plaintiff received a letter from Customs dated January 27, 1992, informing it that the previous rulings were under consideration to be revoked. Customs invited Plaintiff to inform Customs of Plaintiff's position on the possible revocation. Letter of Jan. 27, 1992, *see* Ex. 10 to Motion.

In response, Plaintiff submitted two letters opposing the revocation, met with officials of the Office of Regulations and Rulings ("OR & R") to present that position, along with representatives of other importers, and made another written submission at that meeting. *See* HRL 951028, Ex. 7 to Motion. Representatives of domestic producers of the subject merchandise also met with officials of OR & R to present their views. Plaintiff submitted a final written submission, dated February 11, 1993. *Id.*

Thus, despite Plaintiff's notice argument, an opportunity to obtain a public discussion and review of the issues did exist and it was, in fact, fully utilized. Therefore, although a notice in the Federal Register was not published, Customs did fulfill the regulation's intent, and provided Plaintiff and other interested parties an opportunity to be heard.

## C

**Customs Had The Authority To Reclassify The Subject Merchandise Without A Change Having Been Made In The Text Of The HTSUS, Even Though Such Reclassification Resulted In A Change In The Rate Of Duty Applicable To The Presentation Boxes**

Customs is charged with classifying merchandise and fixing the rate of duty. 19 U.S.C. § 1500(b). "Resolution of [whether particular imported merchandise has been classified under an appropriate tariff provision] entails a two-step process: (1) ascertaining the proper meaning of specific terms in the tariff provision; and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed." *Sports Graphics, Inc. v. United States,* 24 F.3d 1390, 1391 (Fed.Cir. 1994). Duty is then assessed at the rate established for the proper classification provision. *See* 19 U.S.C. § 1500.

Customs does not set the duty rates. Only Congress is empowered to lay and collect taxes (including duties). Constitution of the U.S., Art. I, Sect. 8. Congress approved the duty rates in the tariff statute and Customs simply applies the rates to goods.

The tariff statute in effect at the time the subject merchandise entered the United States was the HTSUS. The HTSUS was the result of the United States' accession to the International Convention on the Harmonized Commodity Description and Coding System (the "Harmonized System"). Congress passed the implementing legislation in the Omnibus Trade and Competitiveness Act of 1988 on August 23, 1988.

The United States surrendered no sovereignty when it acceded to the Convention, and it is not obligated to apply the Harmonized System uniformly with the other Contracting Parties. "Guidance For Interpretation Of Harmonized System", 23 Cust.Bull. 379–380, T.D. 89–80. There is, however, an obligation to "not modify the scope of the Sections, Chapters, headings or subheadings of the Harmonized System." *Id.* at 380. As a result, Customs looks to background documentation in interpreting the HTSUS so that its classification rulings do not modify the system. *Id.*

### 1

**Customs Correctly Consulted The Explanatory Notes, Even Though They Were Amended, In Determining To Reclassify The Presentation Boxes**

The Explanatory Notes to the Harmonized System are particularly helpful to

Customs. In considering the role of the Explanatory Notes, Congress stated:

> The Explanatory Notes constitute the Customs Cooperation Council's official interpretation of the Harmonized System. They provide a commentary on the scope of each heading of the Harmonized System and are thus useful in ascertaining the classification of merchandise under the system.
>
> The Explanatory Notes were drafted subsequent to the preparation of the Harmonized System nomenclature itself, and **will be modified from time to time** by the CCC's Harmonized System Committee. Although generally indicative of proper interpretation of the various provisions of the Convention, the Explanatory Notes, like other similar publications of the Council, are not legally binding on contracting parties to the Convention. Thus, while they should be consulted for guidance, the Explanatory Notes should not be treated as dispositive.

Report of the Joint Comm. On The Omnibus Trade and Competitiveness Act, P.L. 100–418, H.Conf.Rep. No. 100–576, 100th Cong., 2nd Sess., at 549 (emphasis added).

Plaintiff claims that Customs reclassified the presentation boxes as a result of the amendment to the Explanatory Notes without any Congressional action or Presidential Proclamation, and that it thus "usurped the authority of Congress by changing the duty rates without any amendment of the HTSUS". Motion at 10. Plaintiff argues that Customs' actions amount to allowing a foreign body to determine U.S. duty rates, contrary to U.S. law.

█ Plaintiff's argument fails. When classifying merchandise, Customs must determine the common meaning of the tariff terms, and may look to the Explanatory Notes to do so. *Ugg Int'l v. United States*, 17 CIT 79, 83–84, 813 F.Supp. 848, 852–53 (1993). As noted above, Congress recognized that the Explanatory Notes would be occa-

sionally modified, and could still be "consulted for guidance."

Here, Customs determined the common meaning of "jewelry boxes". It considered the amended Explanatory Note and decided to adopt it as the common meaning of "jewelry boxes". Then, Customs found that the presentation boxes fit within the common meaning of "jewelry boxes" and assessed the appropriate duty rate set forth in the HTSUS.[10]

Customs has not "changed the duty rates" applicable to the presentation boxes. Rather, Customs has reclassified the presentation boxes in a different subheading based on its most up-to-date understanding of the common meaning of the relevant tariff terms. The fact that the different subheading carries a higher duty rate than the former classification does not constitute an usurpation of authority because Congress established the duty rates in the HTSUS. Indeed, Defendant argued, "[t]he language and rates of duty applicable under both the old and new subheadings remained the same." Cross–Motion at 21. Customs could properly use the amended Explanatory Note to determine the common meaning of a tariff term, even though the merchandise at issue is then reclassified under a higher tariff.

### 2

### Customs Did Not Need Action By The ITC To Reclassify The Presentation Boxes

The International Trade Commission ("ITC") is charged with keeping the HTSUS under continuous review. In conjunction with this responsibility, 19 U.S.C. § 3005(a) provides that the ITC:

> shall recommend to the President such modifications in the [HTSUS] as the [ITC] considers necessary or appropriate—
>
> > (1) to conform the [HTSUS] with amendments made to the Convention;
> >
> > (2) to promote the uniform application of the Convention and particularly the Annex thereto;

---

**10.** The Court does not make any determination regarding whether the presentation boxes are properly classified as "jewelry boxes" within

Heading 4202. That will be before the Court in a subsequent proceeding.

(3) to ensure that the [HTSUS] is kept up-to-date in light of changes in technology or in patterns of international trade;

(4) to alleviate unnecessary administrative burdens; and

(5) to make technical rectifications.

Plaintiff argues that the ITC had to suggest modification of the HTSUS to ensure that the presentation boxes would be dutiable at the previous rates, and the President had to issue a proclamation concerning the modification, before the goods could be reclassified based on an amended Explanatory Note. Motion at 26–28. Refusal by the ITC to recommend any changes results in the existence of the *status quo*. Plaintiff's Reply at 17.

Plaintiff suggests that Customs should have proceeded in this case as it did in a case involving fortified orange juice. 56 Fed.Reg. 25692, ITC Investigation 1205–2 (June 5, 1991) (*"Fortified Orange Juice"*). In that case, the Harmonized System Committee ("HSC") examined the classification of certain orange juice fortified with calcium. The HSC decided that the fortified orange juice should be classified as food preparation not elsewhere specified or included in heading 21.06 rather than as orange juice of heading 20.09. The United States did not agree with this decision, and entered a reservation. Customs requested action by the ITC to recommend to the President the necessary modifications to the HTSUS to promote the uniform application of the Convention. *Id.*

This case is distinguishable from *Fortified Orange Juice*. Unlike the case in *Fortified Orange Juice* where the HSC examined the orange juice at issue and determined its classification, Plaintiff has offered no evidence that the subject merchandise was examined. Rather, it appears the Explanatory Note's description of "jewelry boxes" was simply amended without any explicit statement that the presentation boxes *per se* were to be classified there.

In addition, although the United States did not agree with the first proposed amendment to the Explanatory Notes, *see Section II Background*, *supra*, there is no indication that the United States did not agree with the

amendment as ultimately adopted, nor did the United States enter a "reservation" regarding the amendment, as was the situation in *Fortified Orange Juice*. Customs was not obligated to follow its actions in *Fortified Orange Juice*.

■ As discussed above, Customs acted appropriately in considering the amended Explanatory Note's description of the tariff term and assessing the appropriate duty as found in the HTSUS. An amendment to the Explanatory Notes is not "an amendment to the Convention" which would need action by the ITC and the President to be effective because the Explanatory Notes are not a part of the Convention. *See* Omnibus Trade and Competitiveness Act of 1988, *supra*.

Indeed, the ITC did conduct an investigation upon the issues raised by Jewelpak, in which Jewelpak fully participated. In rejecting Jewelpak's argument that the HTSUS had to be modified for any change to be effective, the ITC found that none of the prerequisites requiring an ITC recommendation for tariff modification pursuant to section 3005 were satisfied:

First, no amendment of the HS Convention occurred as a result of the HSC's adoption of the new Explanatory Note that confirmed the inclusion of point-of-purchase jewelry presentation boxes in heading 4202. Second, uniform application of the Convention has apparently been promoted by Customs' recent ruling to reclassify these products—changes in duty rates notwithstanding—in heading 4202. Third, changes in technology or trade patterns are not at issue in this case. Fourth, the importers' proposal does not alleviate any unnecessary administrative burden and, in fact, may lead to increased administrative burden. Finally, the proposed modifications cannot be considered to be within the realm of technical rectifications to the HTS.

"Proposed Modifications to the Harmonized Tariff Schedule of the United States", US-CIT Pub. No. 2673 at 5 (Aug.1993); Cross-Motion at 22–23.

## IV

### CONCLUSION

For the foregoing reasons, Plaintiff's Motion For Summary Judgment is denied and Defendant's Motion For Partial Summary Judgment is granted. The second and third causes of action of Jewelpak's Complaint are dismissed.

### ORDER

This case having come before the Court for decision, and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

ORDERED that Plaintiff's motion for summary judgment be, and hereby is, denied; and it is further

ORDERED that Defendant's motion for partial summary judgment be, and hereby is, granted; and it is further

ORDERED that Plaintiff's second and third causes of action of its Complaint be, and hereby are, dismissed; and it is further

ORDERED that each party shall bear its own costs; and it is further

ORDERED that pursuant to USCIT R. 16, the parties shall submit a proposed scheduling order with proposed dates addressing the completion of discovery, and the submission of dispositive motions and/or requests for trial with regard to Plaintiff's first cause of action, on or before January 8, 1997.