**Slip Op. 05-154**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

_____
                                            :
FOREST LABORATORIES, INC.,                  :
                                            :
              Plaintiff,                     :
                                            :
      v.                                     :    Court No. 03-00416
                                            :
UNITED STATES,                              :
                                            :
              Defendant.                     :
                                            :
_____:

[Plaintiff's motion for judgment on the pleadings is denied. Defendant's cross-motion for judgment on the pleadings is granted. Defendant's motion in the alternative for summary judgment is moot. Case dismissed.]

Barnes, Richardson & Colburn (Kevin J. Sullivan and James S. O'Kelly) for Forest Laboratories, Inc., plaintiff.

Peter D. Keisler, Assistant Attorney General; Barbara S. Williams, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Amy M. Rubin); of counsel: Chi S. Choy, Office of the Assistant Chief Counsel, International Trade Litigation, United States Bureau of Customs and Border Protection, for the United States, defendant.

December 6, 2005

**OPINION**

**TSOUCALAS, Senior Judge**: Plaintiff, Forest Laboratories, Inc. ("Forest Labs") moves for judgment on the pleadings pursuant to USCIT R. 12(c) on the ground that there is no genuine issue as to any material facts. Forest Labs contends that the Bureau of

Customs and Border Protection of the Department of Homeland Security ("Customs")[1], defendant, is required to reliquidate Forest Labs' entries of hydrated hydroxypropyl methylcellulose ("HPMC") under subheading 3912.39.00 of the Harmonized Tariff Schedule of the United States ("HTSUS") at a free rate of duty. Customs cross-moves for judgment on the pleadings or, in the alternative, moves for summary judgment pursuant to USCIT R. 56 stating that its liquidation at 4.2 percent is correct.

### JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a) (2000).

### STANDARD OF REVIEW

USCIT R. 12(c) provides that any party may move for judgment on the pleadings after the pleadings are closed and if it would not delay trial. A USCIT R. 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." Hebert Abstract Co.

---

[1] The United States Customs Service was renamed the Bureau of Customs and Border Protection of the Department of Homeland Security, effective March 1, 2003. See Homeland Security Act of 2002, Pub. L. No. 107-296, § 1502, 116 Stat. 2135 (2002); Reorganization Plan for the Department of Homeland Security, H.R. Doc. No. 108-32 (2003).

v. Touchstone Properties, Ltd., 914 F.2d 74, 76 (5th Cir. 1990) (citations omitted). A motion for judgment on the pleadings may be granted if the moving party is entitled to judgment as a matter of law. See N.Z. Lamb Co. v. United States, 40 F.3d 377, 380 (Fed. Cir. 1994). The Court may convert a motion to dismiss into a motion for summary judgment under USCIT R. 56 if it relies on evidence outside the pleadings. See USCIT R. 12(c). "On a motion for summary judgment, it is the function of the court to determine whether there are any factual disputes that are material to the resolution of the action." Phone-Mate, Inc. v. United States, 12 CIT 575, 577, 690 F. Supp. 1048, 1050 (1988) (citation omitted). Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See USCIT R. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A ruling on a motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss under USCIT R. 12(b) for failure to state a claim. See GATX Leasing Corp. v. Nat'l Union Fire Ins. Co., 64 F.3d 1112, 1114 (7th Cir. 1995). A district court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (citation

omitted).  In deciding a motion to dismiss for failure to state a claim, as well as a USCIT R. 12(c) motion for judgment on the pleadings, the Court must accept all well-pleaded facts as true and view them in the light most favorable to the nonmovant.  See C.J. Tower & Sons of Buffalo, Inc. v. United States, 68 Cust. Ct. 377, 379 (1972); see also 5C Wright & Miller, Federal Practice and Procedure § 1368 (3d ed. 2004).

**DISCUSSION**

**I.   Background**

This action involves 35 entries of HPMC.  See Def.'s Mem. Supp. Cross-Mot. J. Pleadings or Alternative Summ. J. Opp'n Pl.'s Mot. J. Pleadings ("Customs' Mem.") at 1.  On February 17, 1999, Forest Labs requested a binding ruling letter on the classification of HPMC, which has a Chemical Abstract Service ("CAS") number of 9004-65-3.  See Mem. Supp. Pl.'s Mot. J. Pleadings ("Forest Labs' Mem.") at 4.  In its request, Forest Labs suggested that the HPMC was correctly classified under subheading 3912.39.00 at a duty rate of 4.2 percent ad valorem.  See id.  On March 17, 1999, Customs issued a ruling letter, NY D88210, agreeing with Forest Labs that the subject merchandise was classifiable under HTSUS subheading 3912.39.00.  See id. at 4-5; see also Customs' Mem. at 1.  In 1999 when Customs issued NY D88210 classifying the HPMC, subheading 3912.39.00 had a duty rate of 4.2 percent ad valorem.  See Customs'

Mem. at 19.  In NY D88210, however, Customs stated that pursuant to General Note 13 of the HTSUS, the HPMC was listed in the pharmaceutical appendix and is thus duty free.  See Compl. Ex. B. Neither the HPMC or its corresponding CAS number are listed in the pharmaceutical appendix.  See Compl. Ex. C.  Upon entry of the HPMC at issue, Customs assessed and liquidated the merchandise at the duty rate of 4.2 percent ad valorem.  See Forest Labs' Mem. at 5; Customs' Mem. at 3.  Forest Labs protested the duty assessment and applied for further review.  See Forest Labs' Mem. at 5.  In response to Forest Labs' protest, Customs issued HQ 965280.  See id.; Customs' Mem. at 3.  HQ 965280 stated that while the classification of the merchandise in NY D88210 was correct, a clerical error resulted in an incorrect statement that the HPMC was duty free.  See Compl. Ex. C at 2.  HQ 965280 denied Forest Labs' protest stating that "a clerical error is exempted from the notice, publication, and comment procedures otherwise required for modifications and/or revocations in 19 U.S.C. § 1625(c)."  See id. Subsequently, Forest Labs filed the present action.

**II.  The Imported Merchandise was Properly Classified and is Not Entitled to Duty Free Treatment**

   **A.   Contentions of the Parties**

      **1.   Forest Labs' Contentions**

Forest Labs contends that Customs is bound by NY D88210

because the ruling letter represents Customs' official position relating to the proper classification and applicable duty rate for the subject HPMC. See Forest Labs' Mem. at 9-21. In order for Customs to change its position that HPMC is entitled to duty free treatment, Customs must modify or revoke its determination pursuant to the procedures set forth in 19 U.S.C. § 1625(c). See id. at 9. Here, however, Customs did not modify or revoke NY D88210. Rather, Customs assessed a duty of 4.2 percent ad valorem on Forest Labs' entries of HPMC at liquidation and ignored its previously stated determination in NY D88210. See id. Forest Labs asserts that Customs' actions were in contravention of its regulations and of 19 U.S.C. §§ 1502 & 1625. See id. Accordingly, Forest Labs maintains that Customs was required to liquidate its entries of HPMC at the free rate of duty under NY D88210. See id. at 7-8. Forest Labs requests that the subject HPMC be reliquidated at the free rate of duty as stated in NY D88210 with a refund and interest as provided by law. See id. at 22.

Specifically, Forest Labs asserts that Customs' regulations set forth the procedures for requesting binding ruling letters. See Forest Labs' Mem. at 9. Pursuant to 19 C.F.R. § 177, Customs issues a statement which interprets and applies customs laws to a specific set of facts upon request from a party seeking a ruling letter. See id. Forest Labs maintains that a ruling letter, such

as NY D88210, "represents the official position of Customs and is binding on all Customs Service personnel until it is modified or revoked." Id. at 10.  Accordingly, for Customs to change the duty rate of the imported HPMC under 19 U.S.C. § 1625 and 19 C.F.R § 177.9, Customs is required to modify or revoke NY D88210.  See id. at 11.  Moreover, 19 U.S.C. § 1625(c) "requires Customs to apply notice-and-comment procedures" to modify or revoke a prior interpretive ruling.  Id.  Customs, however, states it has not revoked or modified NY D88210 because its assertion that the subject HPMC was entitled to a duty free rate was the result of clerical error.  See id.  Forest Labs argues that Customs' determination in NY D88210 "was an error in the construction of the law, not a clerical error." Id. at 12.  To correct an error in the construction of law, Customs must follow the procedures set forth by 19 U.S.C. § 1625(c).  See id.  Forest Labs notes that even if HQ 965280 had the effect of modifying NY D88210, such modification may not be applied retroactively.  See id. at 15.  The increase in duty rate assessed on the subject merchandise, therefore, is contrary to law.  See id. at 14-15.

Finally, Forest Labs contends that a clerical error is a mistake made by a person "upon whom devolves no duty to exercise judgment, in writing or copying the figures or in exercising his intention." Id. at 16 (citing PPG Indus., Inc. v. United States,

7 CIT 118, 123 (1984)).   Here, the individual at Customs responsible for reviewing Forest Labs' ruling request was "charged with interpreting the HTSUS and the Customs laws and regulations." Id.  Forest Labs asserts that the error committed in NY D88210 was a flawed application of General Note 13 of the HTSUS and does not fall within the meaning of "clerical error."  See id.  Even if Customs' determination was a clerical error, Forest Labs argues that Customs failed to provide sufficient notice of its decision modifying NY D88210.  See id. at 17-21.   Forest Labs asserts that without such notice, "the ruling remains in effect and Forest [Labs'] importations of HPMC are entitled to the free rate of duty."  Id. at 17.   Forest Labs maintains that NY D88210 represents Customs' official position binding Customs officers throughout the United States, and that the HPMC at issue satisfied General Note 13 thereby qualifying for duty free treatment.  See Pl.'s Reply Opp'n Def.'s Cross-Mot. J. Pleadings at 3.

### 2.   Customs' Contentions

Customs replies that Forest Labs has failed to establish that the imported HPMC qualifies for the duty free rate under subheading 3912.39.00 of the HTSUS.  See Customs' Mem. at 8-9.  Specifically, Customs asserts that the imported merchandise is not entitled to the duty free rate because it is not included in the pharmaceutical appendix of the HTSUS.  See id. at 8.  Pursuant to General Note 13

of the HTSUS, the HPMC at issue cannot be imported duty free.  See id. at 8-9.  Moreover, Customs contends that granting Forest Labs' claim would violate 19 U.S.C. § 1625.  See id. at 9-14.  Customs argues that the erroneous duty rate espoused in NY D88210 "cannot be construed as a policy statement that requires notice and comment" under 19 U.S.C. § 1625(c).  Id. at 10.  Customs contends that it "merely liquidated Forest Labs' entries and applied the duty rate applicable to the tariff provision under which the merchandise was classified."  Id.  By liquidating and assessing the applicable duty rate, Customs argues that it did not make an interpretive ruling or decision, but instead made a "final computation of the duties due and owing on an entry."  Id. at 11.  Customs further argues that even if HQ 965280 is viewed as a "proposed interpretive ruling or decision" which modifies NY D88210, the only "official opinion" from the letter is "the determination that the merchandise described therein is classifiable under subheading 3912.39.00."  Id.  It is Congress, not Customs that establishes the duty rates contained in HTSUS and that Customs has no authority to amend those rates.  See id. Customs argues that it has no authority to adopt an "official position" regarding any aspect of the tariff statute that surpasses the powers granted to it by Congress.  See id.

Customs further asserts that even if NY D88210 is interpreted as representing its official position, the duty free rate should not apply because NY D88210 was the result of a clerical error. See id. at 14. As such, it is "exempt from the requirements of 19 U.S.C. § 1625(c)." Id. Customs admits that it erred in failing to note the 1997 Presidential Proclamation, which removed HPMC from the pharmaceutical appendix eliminating its duty free status. See id. at 16. Customs argues that as the duty rate was "erroneously copied" from an earlier document, the act of transposing the incorrect duty rate is "clearly covered by the definitions of clerical error." Id. at 17.

Finally, Customs argues that Forest Labs did not act in "good faith" through its "failure to timely notify Customs of the known error in NY D88210 and its attempt to take advantage of that error by entering its merchandise 'duty free'." Id. at 24. Customs states that had it incorrectly identified a duty rate higher than 4.2 percent, "Forest Labs would have notified Customs of the error well within 60 days after issuance and would not have willingly entered its merchandise at that rate." Id. at 24 (emphasis retained). Customs maintains that NY D88210 did not represent its official position and the mistake was a result of a clerical error which Forest Labs took advantage of in bad faith. See id. at 7-8.

B.    Analysis

Customs does not have the authority to either intentionally or accidentally impose a duty rate that differs from that which has been authorized by Congress through the HTSUS.  See Jewelpak Corp. v. United States, 20 CIT 1402, 1409-10, 950 F. Supp. 343, 350 (1996) (stating "Customs does not set the duty rates.  Only Congress is empowered to lay and collect taxes (including duties). Congress approved the duty rates in the tariff statute and Customs simply applies the rates to goods.").  Customs is empowered to classify imported merchandise under the correct HTSUS heading.  See 19 U.S.C. § 1500 (1994).  The general power to modify the HTSUS belongs exclusively to Congress.  See 19 U.S.C. § 3004 (1994). Congress has given the President limited authority to make modifications to the HTSUS based solely within the framework of statutorily defined objectives.  See generally, id.; 19 U.S.C. § 3521 (1994).  On April 1, 1997, President Clinton exercised this limited authority and removed HPMC from the duty free pharmaceutical appendix.  See Proclamation No. 6982, 62 Fed. Reg. 16,039 (Apr. 3, 1997).  All material events in the case at bar occurred after Presidential Proclamation 6982 went into effect, and HPMC was thus properly classifiable under subheading 3912.39.00 with a duty rate of 4.2 percent ad valorem.  See Forest Labs' Mem. at 4; Customs' Mem. at 1.

The Court holds that Customs properly liquidated the subject HPMC at 4.2 percent ad valorem.  NY D88210 properly classifies the subject HPMC under subheading 3912.39.00.  See Forest Labs' Mem. at 4; Customs' Mem. at 1.  Customs does not have the authority to assess a rate of duty other than that which is listed in the HTSUS. See Jewelpak Corp., 20 CIT at 1409-10, 950 F. Supp. at 350.  The HPMC was not listed in the duty free pharmaceutical appendix.  See Proclamation No. 6982, 62 Fed. Reg. at 16,041.  The applicable duty rate for the subject HPMC at the time of entry was 4.2 percent ad valorem.  See HTSUS subheading 3912.39.00.  Listing a no duty rate in NY D88210 was a misstatement because Customs is not empowered to assess a duty rate that differs from that listed in the HTSUS.

Forest Labs argues that the misstated duty rate was within the type of error that required notification on the part of Customs. See Forest Labs' Mem. at 9.  The Court does not agree.  19 U.S.C. § 1625(c) requires notification  when Customs modifies or revokes "a prior interpretive ruling or decision."  See 19 U.S.C. § 1625(c) (1994).  The case at bar does not deal with an 'interpretive ruling' which Customs is authorized to make, such as the classification of imported merchandise.  See 19 U.S.C. § 1500. Instead, it deals with a misstated duty rate.  Forest Labs is not arguing an error in classification.  See Forest Labs' Mem. at 4. They agree with the classification but argue that since Customs

listed the wrong duty rate, Customs is required to abide by the notification requirements of 19 U.S.C. § 1625(c) by issuing a modification or revocation of NY D88210. See id. at 11. As Customs is not empowered to set duty rates, the duty rate assessed at liquidation is not a modification under authority of law which would have required notice as set forth in 19 U.S.C. § 1625(c). The duty rate listed in the HTSUS for the subject merchandise is 4.2 percent ad valorem and Customs' is not empowered to state otherwise.[2] Thus, Customs liquidated Forest Labs' HPMC at the correct duty rate and, despite Customs' correction of the originally misstated duty rate, notice was not required.


### C.    Conclusion

The Court holds that Customs has no legal authority to impose a duty rate on goods that differ from the rates listed in the HTSUS. Accordingly, the Court holds that Customs correctly liquidated Forest Labs' entries of HPMC under subheading 3912.39.00

---

[2] Forest Labs cites Int'l Custom Prod., Inc. v. United States, 29 CIT ___, ___, 374 F. Supp. 2d 1311, 1333 (2005), as an example of this Court requiring notification when Customs alters its own ruling. Int'l Custom Prod. involves a modification to a ruling made by Customs based on a reevaluation of a classification. See id., 29 CIT at ___, 374 F. Supp. 2d at 1328-29. Int'l Custom Prod. is not applicable here because the present case does not deal with classification, but with tariff rates instead. Since Customs is authorized to classify imported goods but not to alter tariff rates as listed in the HTSUS, the case at bar differs substantially from Int'l Custom Prod. and thus the notification requirements of 19 U.S.C. § 1625(c) are not required.

at 4.2 percent <u>ad valorem</u>.  The Court is unpersuaded by all other arguments.  Plaintiff's motion for judgment on the pleadings is denied and Defendant's cross-motion for judgment on the pleadings is granted.  Defendant's motion in the alternative for summary judgment is moot.  Judgment will be entered accordingly.


                                        <u>      /s/ Nicholas Tsoucalas      </u>
                                             NICHOLAS TSOUCALAS
                                               SENIOR JUDGE

Dated:     December 6, 2005
           New York, New York